THOMAS H. VICKERY, SR., ET AL., *v.* MARYLAND TRUST COMPANY, ET AL.

[No. 95, October Term, 1946.]

180

*Decided March 19, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, GRASON, HENDERSON, and MARKELL, JJ.

*C. Keating Bowie, Jr.,* and *Edward H. Burke,* with whom were *John Harwood Stanford* and *Bowie, Burke & Leonard* on the brief, for the appellants.

*William A. Graham,* with whom were *Niles, Barton Morrow & Yost* on the brief, for the Maryland Trust Co., appellee.

*George W. Constable* for Edward V. Heiskell and others, appellees.

*Eben J. D. Cross,* with whom were *Cross* and *Shriver* on the brief, for the Safe Deposit and Trust Co., trustee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City construing a Declaration of Trust executed by Mabel R. Vickery, deceased, on December 19, 1929. On that date the settlor executed an irrevocable instrument, conveying certain stocks and bonds to the

Maryland Trust Company, trustee, in trust to collect the income and, after paying proper charges, to pay the remaining net income as follows:

"First: During my lifetime to pay the same to me.

"Second: Upon and after my death * * * to pay the same in equal parts to my then surviving brothers and sister and my nephews and nieces, all of my nephews and nieces at the time of any distribution of said income to take as a unit and to receive his or her respective share of said distribution *per capita* and not *per stirpes*, the issue of any deceased nephew or niece to take the part which his, her or their respective parent would have taken if then living; so that all of my nephews, and nieces (including the issue of any deceased nephews or nieces) as a unit shall, at the time of any distribution of said income after my death and during the lifetime of the last survivor of my brothers, sister and nephews and nieces living at the time of my death, receive the same amount as each of my then surviving brothers and sister; or, should both of my brothers and my now living sister pre-decease at least one of my nephews or nieces, prior to the termination of this Trust, then thereafter during the continuance of this Trust and after my death, the whole of said net income shall be divided equally among my nephews and nieces, the issue of any deceased nephew or niece to take as above provided.

"Third: Upon the death of the last survivor of my brothers, sister and nephews and nieces living at the time of my death, the said Trustee shall divide and distribute the principal of said estate among my nephews and nieces born after my decease, and the issue of all my nephews and nieces, *per stirpes* and not *per capita*, absolutely and free of all trust."

At the date of the Declaration of Trust the settlor's parents were dead and she had two brothers, Stephen and Thomas, and one sister, Mary, who were then living, and five nephews and nieces, one nephew being the son of Thomas, and one nephew and three nieces being the children of a deceased sister, Edith Vickery Heiskell.

The settlor also had at that time two grandnephews and three grandnieces, grandchildren of Mrs. Heiskell.

The settlor died on January 11, 1946. She was survived by her two brothers, Thomas and Stephen, and by the same nephews and nieces, and the same grandnephews and grandnieces and another grandniece born after the date of the Declaration of Trust. Her sister, Mary Vickery Playford, had predeceased her, leaving no issue. Her brother Stephen died, unmarried, while this case was pending in the lower court.

On December 20, 1929, the day after the execution of the Declaration of Trust, the settlor executed a will wherein she disposed of "all the rest, residue and remainder of my estate and property of every kind, nature and description, and wheresoever located, in possession, in remainder or over which I may have testamentary disposition (excepting the trust estate created by myself under a Deed of Trust, dated December 19, 1929, to the Maryland Trust Company, Trustee, which will be disposed of under the terms of said Trust)" to the same persons and in language similar to that used in the Declaration of Trust.

The initial paragraph of the Declaration of Trust declared: "Know All Men By These Presents, that I, Mabel R. Vickery, unmarried, of Baltimore City, Maryland, desiring to provide an income for myself during my natural life, and thereafter for my living brothers and sister and the issue of any deceased brother or sister until the death of the last survivor of my brothers, sister, and my nephews and nieces living at the time of my death; and in such manner or proportion that, upon my death and until the decease of said last survivor, the total net income from the Trust hereby created shall from time to time be equally divided between my then living brothers and sister and the issue, as a unit, of my then deceased sister and brothers *per capita* and not *per stirpes*, the issue of any deceased nephew or niece to take the part which his, her or their parent would have taken

if then living; * * * have granted, assigned, transferred and conveyed * * *."

At the trial below, the Chancellor admitted in evidence, over objection, a letter dated December 26, 1929, from the draftsman of the Declaration of Trust to the Maryland Trust Company, which letter was approved by the settlor over her signature, reading in part as follows: "* * * I beg to say that Miss Vickery, the grantor, during her several conferences with me in connection with the preparation of this Deed of Trust, expressed her wishes as follows, and it was this expression which has been incorporated into the Deed of Trust: * * * that, after her death and until the decease of the last survivor of her brothers, sister, and nephews and nieces, who may have been living at the time of her death, the entire net income be divided from time to time into as many equal parts as there may be surviving her at the time of each distribution thereof, brothers and sisters plus one, the one additional part to be divided equally among the issue of any deceased brothers and sisters *per capita* and not *per stirpes*, the issue of any deceased nephew or niece to stand in the place of his, her or their parent *per stirpes* and not *per capita;* this provision, of course, as the Trust continues, will result in a decreasingly smaller number of parts into which the income is to be divided as a brother or sister dies; with the result that, after the death of her now living two brothers and sister, the entire net income will be divided in equal parts among her nephews and nieces *per capita* and not *per stirpes,* until the decease of the last survivor of those living at the time of her death when the Trust will terminate."

The Chancellor, by his decree, determined that, in the Declaration of Trust: (a) the limitations of life interests to the brothers and sister and nephews and nieces of the settlor are valid; (b) the limitations of life interests to issue of nephews and nieces of the settlor, and all remainders created by that instrument, are void because in violation of the Rule against Perpetuities; (c)

no nephew or niece may share as such in the fund until the death of his parent; (d) any amounts representing void interests pass under the residuary clause of the will and are payable to the executors under the will of Mabel R. Vickery. Thomas H. Vickery, and his son, Thomas H. Vickery, Jr., appealed from the decree. There were no cross-appeals.

The appellants contend (1) that the limitations of life interests to nephews and nieces are void, as well as the limitations to issue of nephews and nieces and the remainders; (2) if the limitation to nephews and nieces is valid, Thomas H. Vickery, Jr., is entitled as a nephew to share in the income during the life of his father because of the explicit language of the second paragraph of ·the Declaration of Trust, and because the letter purporting to state the settlor's intention to the contrary was inadmissible; (3) that the part of the trust estate which is subject to the invalid limitations does not pass under the residuary clause of the will, but should be distributed directly to her next of kin.

All of the parties concede and agree that the ultimate remainders to the issue of nephews and nieces, purportedly created by the Declaration of Trust, are void; all of the parties likewise agree that the life interests to the brothers and sister are valid. The controversy hinges upon the status of the life interests of nephews and nieces and their issue.

1. The parents of the settlor were dead when the Declaration of Trust was executed, and it necessarily follows that the brothers and sister of the settlor, then living, were the only persons who could ever answer that description. The rule against perpetuities is directed, not against the duration of estates, but against the lateness of vesting. As stated in *Gray on Perpetuities*, 4th Ed., Sec. 201, page 191: "No interest is good unless it must vest, if at all, not later than 21 years after some 'life in being' at the creation of the interest." "In determining this question of remoteness, there is an invariable principle that regard is to be had to possible, and not

merely actual events." *Perkins v. Iglehart,* 183 Md. 520, 527, 39 A. 2d 672, 677; *Gambrill v. Gambrill,* 122 Md. 563, 569, 89 A. 1094.

Gray states (Sec. 370, p. 392) : "A devise to the testator's grandchildren as a class is good if the vesting is not postponed to a time after they become of age, for they must all become of age within 21 years after the death of their parents (the testator's children), and the parents must all have been born (or begotten) in the testator's lifetime. What is true of a devise to grandchildren of the testator is true also of a devise to grandchildren of a person who has died before the testator." In the case at bar the life interests to nephews and nieces (the grandchildren of the settlor's parents who were dead when the deed was executed), if limited to that class, would appear to be perfectly good, because their interests were bound to vest upon the death of their parent, the settlor, or some brother or sister of the settlor, all of whom were "lives in being" when the deed was executed. The appellants contend, however, that the class consists not only of nephews and nieces, but issue of deceased nephews and nieces; they invoke the rule that a gift void as to any potential member of a class is void as to all. The appellees contend, on the other hand, that the shares are separated by the terms of the instrument, and that the class rule does not apply.

The appellants rely strongly upon the case of *Perkins v. Iglehart, supra,* 183 Md. 520, 39 A. 2d 672. The bequest in that case involved a remainder in trust for the benefit of children, and descendants of deceased children, of the son of the testatrix, living at the death or remarriage of the son's widow, with a gift over to his next of kin, in the absence of children or descendants. It was contended that since the son's widow might have been born after the death of the testatrix, and might have lived longer than 21 years and the period allowed for gestation after the death of the son, that both the gifts over were void. It was held that the principle that a contingent gift to a class vests on the birth of a member

of the class (an event which did not happen) could not be applied to validate the gifts over. Children and descendants were treated as one class.

The appellees rely chiefly upon the case of *Bowerman v. Taylor,* 126 Md. 203, 94 A. 652. The deed of trust in that case was for the benefit of the settlors, Taylor and his wife, during their joint lives and the life of the survivor, then for the use of the settlors' children, born before or after the execution of the deed, who might be living at the expiration of the estate of the surviving settlor, the issue then living of a deceased child to be substituted for the parent *per stirpes;* and upon the death of any of such children or issue, their several interests to their respective descendants, if any, and if none, then to be held for the benefit of the surviving children and issue for life.

The Court said (page 212 of 126 Md., page 654 of 94 A.) : "In the case before us the final disposition of the estate is not to a single class of persons some of whom may be incapable of taking, but to distinct classes whose capacity must be separately considered and determined. Upon the death of each of the secondary life tenants his or her interest is given to his or her descendants absolutely, regardless of the continuance of the life interest of the other children or issue. All the life estates being valid, and the remainder limited upon each being disposed of separately by the terms of the deed, * * * the question of capacity to take on the part of the descendants of any particular life tenant does not depend upon the status of remaindermen claiming under a similar relationship to a different beneficiary."

In *Turner v. Safe Deposit & Trust Co.,* 148 Md. 371, 129 A. 294, the trustee under a will was directed, after the expiration of the widow's life estate, to divide the estate into as many parts as there were children of the testator's brother Barreda living at the time of the widow's death, the children of any deceased child of the brother to be treated as representing their parent, and it was provided that the part of the estate so held in

trust for a child of the brother should pass upon the death of such child to his or her issue, if any then living, and in default of such issue to the survivors of such life beneficiaries or their children. The final limitations were to distinct classes of persons. The Court said, speaking through Judge Urner (page 379 of 148 Md., page 297 of 129 A.) : "There were no children of Barreda * * * born after the will in this case became effective upon the death of the testator. If there had been any such after-born children living when the widow's life estate ended, they would have taken valid life interests in separated portions of the estate, but the limitations in remainder as to those portions of the estate would have been invalid because not certain to vest within the period of a life in being, plus 21 years, after the will became operative. The incapacity of a designated class of persons to take such a remainder should not impair the validity of a separate limitation in remainder to a different class. * * * As the only shares with which we are concerned are those of persons who were in being when the testator died, the final limitations to classes of remaindermen who must be living at the death of those life tenants cannot be held to disregard the restrictions which the rule imposes." To the same effect, see *Albert v. Albert,* 68 Md. 352, 12 A. 11; *Gray on Perpetuities,* 4th Ed., Sec. 392, p. 408 and cases cited; *IV Restatement, Property,* Sec. 389; 51 *Harvard Law Review,* 1329, 1347; *cf. Safe Deposit & Trust Co. v. Sheehan,* 169 Md. 93, 179 A. 536.

In the case at bar the share of the nephews and nieces in the trust estate is described at a unit, from which they take the income *per capita.* This description, however, is only for the purpose of fixing the *quantum* of their total share equal to the share of each brother and sister. The language is "take as an unit and to receive his or her respective share," and the substitutional clause as to issue refers to the "part which his, her or their respective parent would have taken if then living." But while we think it is clear that the life interests of each nephew

and niece and their issue must be dealt with separately, by the terms of the instrument, the limitation to issue cannot be sustained, even as to issue of a nephew or niece *in esse* at the time the deed became operative, because the class of issue is not closed, as in the Bowerman case, but would remain open to let in after-born descendants beyond the period prescribed by the rule. It follows that the decree of the Chancellor was correct in these respects.

2. We hold that Thomas H. Vickery, Jr., is not entitled as a nephew to share in the income during the lifetime of his father. The preamble to the deed clearly states that only the issue of deceased brothers and sisters shall be entitled to share in the income from the trust. This specific declaration of intent may be taken to limit the general designation of nephews and nieces in the second paragraph of the instrument. Compare *Weinbeck v. Dahms*, 134 Md. 464, 466, 107 A. 12, and *Mattingly Lumber Co. v. Equitable Building & Savings Ass'n*, 176 Md. 403, 5 A. 2d 458. All of the language in the deed should be given effect where possible. *Zittle v. Weller*, 63 Md. 190. Since we reach this result by considering the instrument itself, we find it unnecessary to pass upon the admissibility of the letter purporting to state the intention of the settlor.

3. We agree with the Chancellor that such part of the trust estate as is subject to the invalid limitations will pass under the residuary clause of the will. As Miller states (*Miller, Construction of Wills*, Sec. 158, p. 419): "The reluctance of courts to construe wills so as to declare an intestacy is especially marked when the will contains a residuary clause, disposing of all the rest and residue of the estate of the testator. There is a marked difference in this respect between a gift of a legacy and a gift of the rest and residue. When a testator makes a will containing a residuary clause or other language of similar import, every presumption is to be made that he did not intend to die intestate as to any part of his estate." In this case the testatrix excepted from the operation of the residuary clause the trust estate

"which will be disposed of under the terms of said trust." That exception can be taken to apply only to the estate actually disposed of by the prior instrument. There was certainly no intention on her part to die intestate, and we perceive no reason why the catch-all provision should be limited so as to produce that result.

We do not agree, however, that the portions of the estate that may hereafter pass under the residuary clause of the settlor's will should be distributed to the Safe Deposit & Trust Company, executor under that will. Such a provision would necessitate holding open her estate in the Orphans' Court for years to come. As pointed out in *Perkins v. Iglehart, supra* (183 Md. 520, 545, 39 A. 2d 672, 684), a court of equity has "power to make complete distribution, and ordinarily will not direct the estate to be transferred to another Court for that purpose." We think the decree should provide for payment of such portions as may hereafter pass under the residuary clause, to the Safe Deposit & Trust Company, named therein as trustee. The trustee can determine any possible questions of taxation or construction, without subjecting the estate to costs of administration in the Orphans' Court.

*Decree affirmed in part, reversed in part, costs to be paid out of the estate.*