## In Re CLARKE'S WILL
CLARKE, INDIVIDUALLY AND AS SUBSTITUTED TRUSTEE, ET AL. *v.* CLARKE

[No. 175, October Term, 1950.]

*Decided June 15, 1951.*

The cause was argued before MARBURY, C. J., and COLLINS, GRASON and HENDERSON, JJ., and GRAY, JR., J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*C. Maurice Weidemeyer,* with whom was *John Demyan, Jr.,* on the brief, for the appellants.

*Charles G. Page,* with whom was *William J. McWilliams* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

J. Beauregard Clarke died on October 14, 1913, leaving a will executed on September 30, 1913. He was survived by his widow, Ella Scott Clarke, and a son, J. Ernest Clarke, who was at that time unmarried. The residue of the estate was left in trust "to pay over to my dear wife Ella Scott Clarke the total net income therefrom during her natural life; and from and after the death of my said wife then to pay over the total net income therefrom to my dear son J. Ernest during his natural life; and from and after the death of my said son J. Ernest, should he survive my said wife, then to his issue, absolutely and in default of issue of my said son, then to such person or persons as he may designate by will duly executed according to the laws of this State; such disposition upon the death of my said son to be free and clear of this trust should my said son not survive my said wife, then I desire and will that she make Will as aforesaid such disposition of the *corpus* of said trust estate as she may think proper, whereupon this trust shall cease. It is my will that my said wife have the privilege of occupying and enjoying my home place called 'Fairview' as long as she may desire and of running the place as she may think proper under the counsel and advice of the trustee aforementioned; but it is particularly my will that neither my said wife nor my said son have the power to anticipate any income from said trust estate, but that said estate, as to principal and interest shall be always free from any creditor of my said wife or son, or both of them." The trustee was given full power to make changes in the trust property, but not to dispose of the home place during the widow's lifetime without her written approval. She was requested to allow the son to reside there as long as she made that her residence.

In 1916 J. Ernest Clarke was married to Angela G. Clarke and there were born to them three sons (a) Joseph Anderson Clarke, who was born February 21,

1918, and died intestate, unmarried and without issue on April 6, 1941; (b) Thomas B. Clarke, who was born on August 7, 1920, is married to Virginia P. Clarke and has no children; (c) Robert Fulton Clarke, who was born on August 10, 1926, and was married to Fay C. Clarke (now Leach) and divorced from her on March 8, 1950. Robert Fulton Clarke, Jr. was born of this marriage on October 16, 1948. Ella Scott Clarke resided at "Fairview" with her son and daughter-in-law until her death on March 13, 1940.

On petition of Tazwell T. Thomas, the trustee named in the will, the court assumed jurisdiction of the trust in 1915. He died in 1943 and Angela G. Clarke was appointed substituted trustee.

The present proceeding was instituted by Robert Fulton Clarke, Jr., through his mother as next friend, to obtain a declaration of his interest in the trust estate, to require an accounting and to protect his interest against threatened dissipation. The petition recited that the substituted trustee proposed to sell the farm "Fairview" and to apply the proceeds for the benefit of her husband. It was prayed that the court continue jurisdiction, require the substituted trustee to account, declare that the petitioner has a one-third remainder interest in the trust estate dependent upon the death of J. Ernest Clarke, and remove the substituted trustee, or require her to furnish bond. The answer admitted the allegations as to pedigree but denied the charges of breach of trust and dissipation of assets, and challenged the standing of the petitioner to sue. After hearing testimony, the court decreed that "by a true construction of the will * * * the word 'issue' means all descendants of J. Ernest Clarke" and that the petitioner "has a contingent remainder in the trust property dependent upon his survival of J. Ernest Clarke, upon which event he will be entitled to share equally with other descendants living at J. Ernest Clarke's death." It was further ordered that the substituted trustee file a report of her administration, and a bond for faithful performance. The

appeal is from that decree. The sole question raised is as to the construction of the will. It is conceded that the testimony taken threw no light on this problem, and it is not printed in the appendix. It was directed almost wholly to the charges of neglect and threatened dissipation of assets. J. Ernest Clarke and his wife are still residing at "Fairview" and he claims to have expended considerable sums for maintenance and repairs. The place has not been farmed for some years. It was shown that there have been negotiations with the State Roads Commission as to the acquisition of an extensive right of way for a new dual highway through the property.

The appellants chief contention is that the word "issue", as used in the will, should be construed to include only the children of J. Ernest Clarke; since the petitioner cannot answer that description, he has no standing to sue.

In *Mazziotte v. Safe Deposit and Trust Company*, 180 Md. 48, 50, 23 A. 2d 4, 5, Chief Judge Bond, speaking for the court, said: "The word 'issue' in the disputed clause is clearly one of purchase. Miller, Construction of Wills, Sec. 77. And standing alone, the meaning of it has been a subject of difference of opinion. Miller, supra, Secs. 89 and 90; Notes 2 A. L. R. 930; 5 A. L. R. 195; 78 A. L. R. 1385, 1398; 117 A. L. R. 691. Primarily, it embraces all lineal descendants. *Goldsborough v. Martin*, 41 Md. 488, 501. But in Maryland it has usually been found equivalent to heirs of the body or those who would take in case of intestacy, thus rendering gifts to remoter descendants only substitutional, in place of gifts to deceased ancestors. *Horwitz v. Safe Deposit Company*, 172 Md. 437, 451; 192 A. 281; Miller, supra, Sec. 358, p. 1012. And see *McPherson v. Snowden*, 19 Md. 197, 229. It is not a word of fixed meaning, and the sense in which the testator has used it is the test for interpretation, and for this context will control. 'Its true interpretation must be found from the connection in which it is used.' *Thomas v. Higgins*, 47 Md. 439, 451 * * *."

The stress in that case was laid upon the use of the words "per capita".

In certain contexts the word has been construed as children. *Thomas v. Safe Deposit and Trust Company,* 73 Md. 451, 458, 21 A. 367, 369, 23 A. 3. In that case the expression was "issue, children or descendants". In *Bishop v. Horney,* 177 Md. 353, 9 A. 2d 597, it was assumed that a remainder to issue vested in the children of the life tenants, although the rights of grandchildren were not involved and the court held that even if the interests were contingent, they would be bound in equity by joinder in a mortgage. On the other hand, in *Ryan v. Herbert,* 186 Md. 453, 460, 47 A. 2d 360, the word "children" was construed to include descendants, largely on the strength of a gift over in default of "issue". Cf. *Lee v. Waltjen,* 141 Md. 458, 462, 119 A. 249.

In the instant case there are several reasons why we think the word should be given the broader meaning. The will was drawn by a lawyer who obviously used the word in its technical, rather than a popular, sense. The testator could have had no particular persons in mind, since his son did not marry until three years after the testator's death. There is nothing to indicate that the testator intended to prefer his putative grandchildren over his putative greatgranchildren. If there were no surviving children of the son at the son's death, but surviving grandchildren, the latter could not take under the will, according to this construction, except as appointees under the son's will. The appellants point out that unless the son survived the testator's widow, neither his children nor descendants could take, except as appointees under the widow's will, but the failure of the testator to recognize either class in that contingency throws no light upon his intention in the contingency now under consideration. Moreover, if the son survived his mother and died leaving one child and any number of grandchildren, the children of a deceased child or children, the latter would be totally disinherited under the appellants' construction, since only the surviving child

would take. In the absence of any evidence of an intention to prefer some of the natural objects of the testator's bounty over others, there is a recognized presumption against such a result. *Fairfax v. Brown,* 60 Md. 50, 60. Cf. *Reed v. McIlvain,* 113 Md. 140, 148, 77 A. 329.

In the will before us we think the word "issue" is not confined to the children of J. Ernest Clarke and hence the infant appellee has a potential future interest in the *corpus* sufficient to sustain the action of the chancellor in requiring the substituted trustee to account and post a bond. That finding would seem to dispose of the present controversy. The petitioner contends that his interest in remainder is contingent upon his survival of J. Ernest Clarke, or, alternatively, vested subject to divestment upon his failure to survive as a member of the class. He contends that if he survives J. Ernest Clarke he will be entitled to share *per capita* with the surviving children and descendants, even though his father may be alive at that time, and that upon the death of Joseph Anderson Clarke, intestate and without issue, Joseph's interest passed to the other members of the class, not to his heirs and next of kin. The appellants seem to contend that the gift was not to a class, but vested absolutely in each child of J. Ernest Clarke at birth, subject to divestment in the event that J. Ernest Clarke predeceased the testator's widow, and subject to diminution *pro tanto* upon the birth of other issue. They concede that the remainders could not vest at the testator's death, since there were no remaindermen in *esse* at that time, but argue that the remainders vested subsequently and are not conditioned upon survival of the second life tenant. They point to the absence of any words such as "then living", or "living at the death of J. Ernest Clarke", and argue that the words "from and after" his death "then to his issue absolutely", relate only to the time of enjoyment.

None of these contentions affects the petitioner's right to relief, but only the method of devolution and the *quantum* of his interest, which is not now material. The

purpose of the present proceeding is to require an accounting and prevent dissipation of assets. The declaration of interest is sought only to that end. If the petitioner has any interest at all he is entitled to invoke the court's protection. 2 Scott, Trusts § 200; *Johnson v. Superior Court*, 1948, 68 Ariz., 68, 199 P. (2) 827, 829. If the home place is sold or condemned, in whole or in part, the substituted trustee, who is authorized by the will to convey and invest the proceeds, will hold the proceeds subject to the trust over which the court has assumed jurisdiction. Under the circumstances, we think the petition does not state a case for general declaratory relief, apart from his standing to sue.

We intimate no opinion as to whether such relief might be granted in other circumstances. In *Ryan v. Herbert*, supra, we construed a will in respect to future interests at the instance of petitioners asserting a right to assign or will their interests, which was denied by the other parties. Cf. *Brown v. Trustees of M. E. Church*, 181 Md. 80, 28 A. 582, where the construction was sought by an executor. In the instant case the petitioner asserts no such right, but on the contrary, since there is no cross-appeal, apparently concedes that his interest is contingent upon his survival of J. Ernest Clarke and not transmissable. In *Staley v. Safe Deposit and Trust Company*, 189 Md. 447, 456, 56 A. 2d 144, we declined to construe the will of a non-resident in the exercise of sound judicial discretion, on the ground that it would not serve a useful purpose or terminate controversy. It has been held that courts in declaratory judgment proceedings will not construe wills on points not in controversy, or not necessary to the determination of the controversy presented. Cf. *In re Brown's Estate*, 289 Pa. 101, 137 Atl. 132 and *Mulcahy v. Johnson*, 80 Colo. 499, 252 P. 816, 821, cited in *Borchard, Declaratory Judgments*, (2nd ed.) p. 300. The mere fact that future interests are involved will not defeat the power to declare rights, but the power should be cautiously exercised where the questions of devolution may never arise

and the rights of unborn persons may be affected. Under the circumstances disclosed by the pleadings in the instant case, we shall remand the case for modification of the decree in accordance with the views here expressed. All questions not now decided are, of course, reserved for future determination as the need may arise.

> *Decree affirmed in part, reversed in part, costs to be paid out of the trust estate.*